**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| TIMOTHY ALLEN FOX, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV05-494-S-LMB |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| OLIVIA CRAVEN, RANDY BLADES, | ) | |
| JOHN/JANE DOES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 30), Plaintiff's Motion to Amend Petition (Docket No. 24), Plaintiff's Motion for Reconsideration (Docket No. 25), Plaintiff's Motion for Leave to File Response (Docket No. 36), and Defendants' Motion for Reconsideration (Docket No. 44).  All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 28).  Having reviewed the parties' filings and the record in this case, the Court concludes that oral argument is unnecessary.  Accordingly, the Court enters the following Order.

**I.**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.    Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**MEMORANDUM DECISION AND ORDER - 1**

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of

the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of

identifying for the court those portions of the record which demonstrate the absence of any

genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the

moving party points to portions of the record demonstrating that there appears to be no genuine

issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-

moving party. To meet its burden of production, the non-moving party "may not rest upon the

mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or

otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see*

*T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth

by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a

light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal

citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The

existence of a scintilla of evidence in support of the non-moving party's position is insufficient.

**MEMORANDUM DECISION AND ORDER - 2**

Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court determined that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility . . . and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community." 544 U.S. at 82. At most, an inmate can seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole. *Id*.

**B.     Introduction**

In 1999 Plaintiff was convicted of felony sexual abuse of a minor child pursuant to Idaho Code § 18-1506(1)(a). He received a sentence of five years fixed, with ten years indeterminate. He is currently an inmate in the custody of the Idaho Department of Correction (IDOC). In this civil rights action, he asserts that his Fourteenth Amendment Equal Protection and Due Process rights were violated when Defendant Olivia Craven and members of the Idaho Parole Commission denied him parole. He also asserts that an Ex Post Facto violation and a Double Jeopardy violation occurred, as well as a violation of the Privacy Act, 5 U.S.C. § 552(a)(e)(5) & (g)(1)(c). The Court previously determined that Plaintiff could not proceed against the Idaho Board of Correction and the Idaho Commission of Pardons and Parole, nor could he proceed on a Privacy Act claim. *Order of February 6, 2006* (Docket No. 8).

**MEMORANDUM DECISION AND ORDER - 3**

Defendants now allege that they are entitled to summary judgment on Plaintiff's remaining claims.  Because Plaintiff seeks to amend his Complaint to add the members of the Idaho Parole Commission ("Parole Commission"), the Motion for Summary Judgment will be considered as if it had been so amended.  However, the term "Parole Commission" will be used for ease to avoid having to refer to each member of the Parole Commission individually, and it is not used to imply that Plaintiff can proceed against the Parole Commission as an entity, a claim that is barred by the Eleventh Amendment.

**C.    Equal Protection - Expungement of Records**

Plaintiff alleges that his pre-sentence investigation (PSI) report contains an entry showing an incident where "Fox tied up his ex-girlfriend when he was 16 years of age, stripped her naked and left her on the side of the road or at a fairground."  *Complaint*, p. 3 (Docket No. 2).  This incident is mentioned in the PSI report, but is not designated as a crime; the PSI report also shows dismissal of several misdemeanor harassment charges that apparently relate to the same ex-girlfriend.  *See PSI Report* (Docket No. 46-4).  Plaintiff argues that the incident should be stricken from the PSI report because it is untrue; he argues that the harassment charge entries should be stricken because they were dismissed.  *Id*. at p. 9.  Plaintiff presents this claim as an Equal Protection violation.

Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities.  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."  *Tigner v. Texas*, 310 U.S. 141, 147 (1940).  Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must

**MEMORANDUM DECISION AND ORDER - 4**

demonstrate that he is similarly situated to others and is being treated in a disparate manner, and that there is no rational basis for the disparate treatment.  *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993).  Stated another way, prison officials need show only a rational basis for dissimilar treatment in order to defeat the merits of Plaintiff's claim.  *Id*. at 271.  Where a case "does not rise to the level of invidious discrimination proscribed by the Equal Protection Clause. . . , the federal courts should defer to the judgment of the prison officials."  *Id*. at 272.

Plaintiff alleges that keeping the erroneous information in his prison records for use by Defendant Craven and the Parole Commission violates the Equal Protection clause because he is not being treated the same as other similarly-situated inmates.  To determine this claim, the Court first reviews the source of the alleged erroneous information.

The PSI report is created for use by the sentencing court in a state criminal case.  Idaho Criminal Rule 32 sets forth the standards and procedures governing the content of PSI reports:

> The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable, and the court may consider such information.  In the trial judge's discretion, the judge may consider material contained in the presentence report which would have been inadmissible under the rules of evidence applicable at a trial.  However, while not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report.

I.C.R. 32(e)(1).

The Rule also requires that a defendant have an opportunity to rebut the information contained in the PSI report:

> The defendant and defendant's attorney shall be given a full opportunity to examine the presentence investigation report so that, if the defendant desires, the defendant may explain and defend adverse matters therein. The defendant shall be afforded a full opportunity to present favorable evidence in defendant's behalf during the proceeding involving the determination of sentence.

**MEMORANDUM DECISION AND ORDER - 5**

I.C.R. 32(g)(1).

Based upon the foregoing, Defendant Craven correctly states that Plaintiff had the opportunity at the time of sentencing to correct the allegedly erroneous information contained in the PSI report.  If the sentencing court intended to strike the entries from the PSI report and did not, Plaintiff's remedy lies with the sentencing court, not the Parole Commission.  Moreover, the Parole Commission records note that Plaintiff disputes that the incident with the ex-girlfriend ever occurred.  The PSI report accurately reflects that his harassment charges were dismissed; Plaintiff points to no authority that requires expungement of the harassment entries so long as they accurately state that the charges were dismissed.  In addition, the Parole Commission records show that the charges were dismissed.

While the PSI report is secondarily used by Defendant Craven and the Parole Commission, it is not created by Defendant Craven or the Parole Commission.  Plaintiff has brought forward no evidence that the Parole Commission has any authority to alter a document that has been prepared for the sentencing court.  In addition, Plaintiff has failed to produce any evidence to establish that the PSI report is incorrect.  As a result, the Court concludes that Plaintiff has failed to show a causal link between Defendant Craven and the erroneous information.[1]

Nor has Plaintiff shown that he is similarly situated to any inmate who has provided actual evidence that his file contained erroneous information that the Parole Commission (1) had authority to correct, and (2) in fact corrected.  Plaintiff's argument that he is similarly situated to

---

[1]  The Privacy Act case Plaintiff relies upon for his expungement of records claim, *Sellers v. Bureau of Prisons*, 959 F.2d 307 (D.C. 1992), is inapplicable to his causes of action against Idaho state officials, who are not subject to the federal Privacy Act.

**MEMORANDUM DECISION AND ORDER - 6**

an inmate whose parole violation charge was dismissed and who was thereafter reinstated on

parole is rejected; here, Plaintiff has provided no facts showing that the items in his PSI report

are false or that Defendants can alter the PSI report.  While Defendants can alter their own

records, Plaintiff's lack of proof of the falsity of the items in the PSI report provides no reason

for requiring an alteration.  Defendants are therefore entitled to summary judgment on this claim.

As a result, allowing amendment of Plaintiff's Complaint to include other defendants in this

claim would be futile.

**D.      Due Process**

Plaintiff alleges that Defendant Craven violated his due process rights when the Parole

Commission took the following actions: (1) denied his request for parole; (2) recommended that

he complete sex offender treatment programs; (3) relied upon allegedly inaccurate information

about his criminal history; (4) failed to provide an adequate appeal process for review of its

decision; and (5) subjected him to a psychological evaluation that was not conducted by a

licensed psychiatrist or psychologist.[2]

---

[2]  Plaintiff's claim that his Due Process rights were violated because his psychological
evaluations were not performed by a licensed psychologist or psychiatrist is rejected as being
without merit, and Plaintiff will not be allowed to amend his Complaint to add further claims of
this nature against new defendants.  Plaintiff relies on former Idaho Code § 20-223(b), which
read:

> No person serving a sentence for rape, incest, committing a lewd act upon
> a child, crime against nature, or with an intent or an assault with intent to commit
> any of the said crimes or whose history and conduct indicate to the commission
> that he is a sexually dangerous person, shall be released on parole except upon the
> examination and evaluation of one or more psychiatrists or psychologists to be
> selected by the commission and such evaluation shall be duly considered by the
> commission in making its parole determination.

I.C. § 20-223(b) (1993) (emphasis added).

(continued...)

**MEMORANDUM DECISION AND ORDER - 7**

The parties were previously informed that it appeared that there was no liberty interest in parole in Idaho, thus foreclosing Plaintiff's claims that he had not received due process at his parole hearings.  The Court invited briefing on that issue, and that issue will now be revisited in order to determine whether Plaintiff can proceed with his due process claims.

---

[2](...continued)
The statute was amended in July 2007 to read "examination of one (1) or more psychiatrists or psychologists or mental health professionals designated for this purpose by the department of correction to be selected by the commission."  Idaho Code § 20-223(b) (2007) (emphasis added).

Plaintiff's argument fails because it is not clear that the statute required a licensed psychologist as opposed to a mental health provider that is the substantial equivalent of a psychologist for purposes of performing the mental health evaluation.  Because the legislature addresses the licensing issue in other related statutes, it is clear that it understood what the word "licensed" meant, and it could have but did not include the word "licensed" in § 20-223.  *Cf.* Idaho Code § 54-2303 (exempting persons who work for the state from licensing, and not limiting licensed counselors or social workers from doing work of a psychological nature); *cf.* Idaho Code § 18-211 (for a competency determination in a criminal case, a qualified psychiatrist or licensed psychologist must be used).

Declining to address the issue of whether the statute required a license, the Idaho Court of Appeals recently determined that the statute relied upon by Plaintiff was not intended to benefit parole candidates; therefore, the statute does not authorize a private cause of action for a parole candidate.  *See Dopp v. Idaho Commission of Pardons and Parole*, 162 P.3d 781, 785 (Idaho App. 2007).  There, the Court reasoned:

> The statute plainly is not designed for the protection of prisoners. The evaluation of the potential parolee is not a therapeutic examination and is not prepared for the potential parolee's benefit. Rather, the examination is a psychological profile prepared for the edification of the Commission, which must determine whether a prisoner is "able and willing to fulfill the obligations of a law-abiding citizen" and whether his release is "in the best interests of society." I.C. § 20-223(c).  Ultimately, the statute is designed to protect the public from sex offenders whose character or high likelihood of reoffense, as revealed by a psychological evaluation, suggests that they are not appropriate candidates for parole. Because a potential parolee is not among the class of persons that the statute is intended to benefit or protect, Dopp does not have a right to enforce any requirement, implied in the statute, that such evaluations be conducted only by licensed psychiatrists or psychologists. Dopp's habeas corpus petition therefore did not state a claim upon which relief could be granted, and the district court properly dismissed it.

*Id.* at 786.

**MEMORANDUM DECISION AND ORDER - 8**

Many parole issues must be brought in habeas corpus actions rather than civil rights actions because they request an immediate or speedier release into the community. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), and *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the United States Supreme Court addressed the issue of whether an inmate could challenge a parole denial via § 1983 rather than habeas corpus. The Court determined that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility . . . and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community." 544 U.S. at 82. At most, an inmate can seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole. *Id.*

*Wilkinson v. Dotson* did not alter the fact that there is no federal constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). It remains the law that an inmate can bring a procedural due process challenge to a parole decision only where there is a state-created liberty interest in parole. *See Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006). The *Wilkinson v. Dotson* case does not address or supersede the liberty interest analysis but merely identifies parole claims that are not barred by *Heck v. Humphrey*. *See Clark v. Traughber*, 2006 WL 721475 (D. Tenn. 2006).[3] Therefore, before an inmate may bring a due

---

[3] The *Clark* court explained:
As Tennessee prisoners have no liberty interest in release on parole, they cannot challenge the procedures used to deny parole (citations omitted). The Supreme Court's decision in *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), does not alter this conclusion. The sole issue in *Wilkinson* was whether inmates were required to bring their challenges to the

(continued...)

**MEMORANDUM DECISION AND ORDER - 9**

process claim arising from a parole denial, he must show that there is a state-created liberty interest in parole.

In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court addressed the liberty interest question.[4]  The court noted that the Idaho sentencing statute, I.C. § 19-2513, uses the nonmandatory words "[t]he offender may be considered for parole or discharge at any time during the indeterminate period of the sentence."[5]  The *Banks* Court held

---

[3](...continued)
constitutionality of state parole procedures in habeas petitions or whether such claims were cognizable in actions pursuant to 42 U.S.C. § 1983. The Supreme Court held that state prisoners could bring challenges to state parole procedures under 42 U.S.C. § 1983. The Supreme Court did not have occasion to consider the merits of the plaintiffs' underlying claims and, in particular, the case did not concern whether any state's laws created a liberty interest in parole. The decision in *Wilkinson*, therefore, has not provided the plaintiff in this case with a viable claim.
2006 WL 721475, at *3.

[4]  *Banks* was effectively overruled on other grounds by *Quinlan v. Idaho Commission for Pardons and Parole*, 69 P.3d 146, 149-50 (Idaho 2003) (there is no statutory basis for appointing counsel in a state habeas corpus proceeding).

[5]  I.C. § 19-2513 provides:
 Whenever any person is convicted of having committed a felony, the court shall, unless it shall commute the sentence, suspend or withhold judgment and sentence or grant probation, as provided in chapter 26, title 19, Idaho Code, or unless it shall impose the death sentence as provided by law, sentence such offender to the custody of the state board of correction. The court shall specify a minimum period of confinement and may specify a subsequent indeterminate period of custody. The court shall set forth in its judgment and sentence the minimum period of confinement and the subsequent indeterminate period, if any, provided, that the aggregate sentence shall not exceed the maximum provided by law. During a minimum term of confinement, the offender shall not be eligible for parole or discharge or credit or reduction of sentence for good conduct except for meritorious service except as provided in section 20-223(f), Idaho Code. The

(continued...)

**MEMORANDUM DECISION AND ORDER - 10**

that, as a result of the statute's language, in Idaho "parole is not an automatic right or liberty interest." *Id*. at 908.  The *Banks* Court acknowledged the existence of  I.C. § 20-223,[6] which governs parole commission decisions and contains the phrase "a parole shall be ordered when. . . ."  However, the court apparently did not find the statute's "shall" language controlling in the liberty interest analysis, although that section is nearly the same as the language deemed mandatory in *Greenholtz* and *Allen*.  Rather, the Idaho Supreme Court relied on I.C. § 19-2513 – which governs sentencing – noting that it does not contain mandatory language, but instead states that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence."

------

[5](...continued)
offender may be considered for parole or discharge at any time during the indeterminate period of the sentence and as provided in section 20-223(f), Idaho Code.

[6]  Idaho Code § 20-223(c) provides:
Before considering the parole of any prisoner, the commission shall afford the prisoner the opportunity to be interviewed by the commission, a commissioner or other designated commission staff. A designated report prepared by commission staff or a designated department of correction employee which is specifically to be used by the commission in making a parole determination shall be exempt from public disclosure; such reports contain information from the presentence investigation report, medical or psychological information, victim information, designated confidential witness information and criminal history information. A parole shall be ordered when, in the discretion of the commission, it is in the best interests of society, and the commission believes the prisoner is able and willing to fulfill the obligations of a law-abiding citizen. Such determination shall not be a reward of clemency and it shall not be considered to be a reduction of sentence or a pardon. The commission may also by its rules, policies or procedures fix the times and conditions under which any application denied may be reconsidered. No action may be maintained against the commission and/or any of its members in any court in connection with any decision taken by the commission to parole a prisoner and neither the commission nor its members shall be liable in any way for its action with respect thereto.

**MEMORANDUM DECISION AND ORDER - 11**

All Idaho cases are in agreement that the parole statutes are not mandatory and that there is no liberty interest in parole in Idaho.  *See Izatt v. State*, 661 P.2d 763, 765-66 (Idaho 1983); *Dopp v. Idaho Comm'n of Pardons and Parole*, 84 P.3d 593 (Idaho Ct. App. 2004); *Drennon v. Craven*, 105 P.3d 694, 696 (Idaho Ct. App. 2004); *Hays v. State*, 975 P.2d 1181 (Idaho Ct. App. 1999); *Vittone v. State*, 759 P.2d 909 (Idaho Ct. App. 1988).  In addition, in *Balla v. Idaho State Board of Correction*, 869 F.2d 461 (9th Cir. 1989), the Ninth Circuit noted that "§ 20-223 does not establish any entitlement to parole," and cited *Allen* and *Greenholtz* in comparison.[7]

In *Sass*, the Ninth Circuit Court of Appeals relied on the principle that "a State's highest court is the final judicial arbiter of the meaning of state statutes" to determine whether a state parole statute was mandatory or permissive.  461 F.3d at 1127.  Because the Idaho Supreme Court has spoken on this issue, this Court is bound to follow its interpretation of state law.

---

[7]  In *Balla*, the Court stated:

Idaho conducts psychological examinations of sex offenders for parole purposes only. Section 20-223(b) requires that a sex offender submit to such an examination before being considered for parole. Idaho Code § 20-223(b). The Parole Commission (Commission) may require a similar examination, however, for any non-sex offender prisoner. *Id*. The Commission is only required to "duly consider" the evaluation. Thus, section 20-223 does not establish any entitlement to parole. *Gee*, 695 P.2d at 379 ("[Idaho Code] § 20-223 does not dictate that the Board of Corrections deny parole to any individual nor does it require that the Board follow the psychiatrist's recommendation, if any."); *Vittone v. State*, 114 Idaho 618, 759 P.2d 909, 910-11 (Ct.App.1988); *Izatt v. State*, 104 Idaho 597, 661 P.2d 763, 765-66 (1983) (*Izatt*). In Idaho, parole is a matter of grace. *Izatt*, 661 P.2d at 766. *Compare Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 2419-22, 96 L.Ed.2d 303 (1987) (Montana parole statute which uses mandatory language to create a presumption of release once certain conditions are met creates a liberty interest protectible under due process clause); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11-12, 99 S.Ct. 2100, 2105-06, 60 L.Ed.2d 668 (1979) (because it contains mandatory language, Nebraska parole statute creates "expectancy of release" which is a liberty interest implicating due process rights).

869 F.2d at 469-70.

**MEMORANDUM DECISION AND ORDER - 12**

Parole is not mandatory in Idaho, resulting in no liberty interest in parole. This conclusion, in turn, prevents an inmate from pursuing due process claims arising from a denial of parole. Accordingly, Defendant Craven is entitled to summary judgment on Plaintiff's due process claims, and it would be futile to allow Plaintiff to amend his Complaint to add other defendants to this claim.[8]

**E.    Ex Post Facto**

Plaintiff alleges that the Ex Post Facto Clause was violated when the Parole Commission and prison made new policies and standards regarding sex offender therapy programming, and applied it to him, even though he was convicted when the policies and standards were not in place. *Complaint*, p. 10 (Docket No. 2). Particularly, when he was convicted, there was no requirement for sex offender therapy prior to parole eligibility. In addition, at that time, an inmate merely placed his name on a waiting list to be able to complete rehabilitative programming. Beginning in 2004, prison policy required that an inmate be within two years

---

[8] Alternatively, the Court notes that, setting aside the items Plaintiff disputes as untrue, there remains more than ample evidence in the Parole Commission records to support a denial of parole and to show that Plaintiff received adequate procedural protections. A parole release determination is not subject to all the due process protections of an adversary proceeding. *Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). In a parole hearing setting, "the full panoply of rights due a defendant in [a criminal adversary proceeding] is not constitutionally mandated, even when a protected liberty interest exists." *Id.* at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). In *Greenholtz*, the Supreme Court held that a parole procedure satisfies due process when (1) the procedure "affords an opportunity to be heard," and (2) the inmate is informed "in what respects he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16. Due process is satisfied if "some evidence" supports the decision, meaning that the decision must have "some basis in fact" and the evidence must have "some indicia of reliability." *Jancsek v. Oregon Bd. of Parole*, 833 F.2d at 1390 (adopting the "some evidence" standard set forth by the Supreme Court in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 456 (1985)). Due process is offended only if the record is "so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

**MEMORANDUM DECISION AND ORDER - 13**

from a parole date or parole hearing to be placed on a waiting list for programs required fo"

parole eligibility.  *Complaint*, pp. 4-5.

The ex post facto provision of the Fifth Amendment "forbids the Congress and the States

to enact any law which imposes a punishment for an act which was not punishable at the time it

was committed; or imposes additional punishment to that then prescribed."  *Weaver v. Graham*,

450 U.S. 24, 28 (1981) (internal citation and punctuation omitted). This prohibition applies to

administrative regulations promulgated pursuant to statutory authority.  *See Garner v. Jones*, 529

U.S. 244, 250 (2000); *Nulph v. Faatz*, 27 F.3d 451, 455 (9th Cir. 1994) (to bring an ex post facto

challenge, "the challenged state action must be a 'law'"; "[w]e have specifically held that the Ex

Post Facto Clause applies to retrospective changes in parole qualifications.").  For purposes of

this analysis, the Court will accept Plaintiff's argument that the Parole Commission and prison

policies and standards at issue can be classified as administrative regulations.

To be an ex post facto violation, the law or regulation "must be retrospective, and it must

disadvantage the offender affected by it."  *Id*. at 29.  A "disadvantage" means that the law or

regulation being challenged "retroactively alter[s] the definition of crimes or increases the

punishment for criminal acts."  *California Department of Corrections v. Morales*, 514 U.S. 499,

504 (1995).

Plaintiff's case is similar to *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).  There,

inmates brought an Ex Post Facto Clause challenge to a Hawaii statute mandating sex offender

treatment for all incarcerated sex offenders, regardless of the date of their offense.  The Ninth

Circuit noted that "[t]here can be no serious dispute that requiring an inmate who has been

labeled a sex offender to complete [a sex offender treatment program] as a precondition to parole

**MEMORANDUM DECISION AND ORDER - 14**

eligibility alters the inmate's parole qualifications."  *Id*. at 825 n.5.  However, the Ninth Circuit

Court determined that the sex offender treatment program requirement was not punishment and

did not "criminalize conduct legal before its enactment."  *Id*. at 825.

The *Neal* Court adopted the reasoning of *Kansas v. Hendricks*, 521 U.S. 346 (1997),

where the United States Supreme Court held that mandatory treatment programs (including

involuntary civil commitment) for inmates classified as sexual violent predators did not violate

the Ex Post Facto Clause, even though treatment or commitment was based on conduct which

occurred prior to the program's beginning.  *Id*. at 826-27.  The *Neal* Court reasoned: "If

involuntary confinement in a 'treatment facility' for an indefinite period of time beyond the

inmate's original sentence is not punishment, then it is certainly not punishment to deny an

inmate eligibility for parole following his classification as a sex offender so that he can

participate in a treatment program."  *Id*. at 827.

Likewise, in *Johnson v. Johnson*, 2001 WL 881284 (D. Tex. 2001), the court rejected an

Ex Post Facto Clause argument, explaining: "In sum, the application of the challenged policy

[mandatory sex offender therapy] has not increased Johnson's punishment for he possesses no

vested right in any particular parole date, and the current policy does not criminalize conduct

that was legal before the subject policy became mandatory."  *Id*. at *3 (footnote omitted).  *See

also Chambers v. Colorado Dep't of Corr*., 205 F.3d 1237 (10th Cir. 2000) (similar facts and

holding).

The reasoning of *Johnson* also applies to Plaintiff's claim that his stay in prison has been

retroactively lengthened because he cannot be paroled until he completes the program.  Because

Plaintiff "possesses no vested right in any particular parole date," his punishment has not been

**MEMORANDUM DECISION AND ORDER - 15**

increased, because his sentence remains a unified fifteen-year term, whether or not he is ever paroled.  *Johnson*, 2001 WL 881284, at \*3.

Plaintiff alternatively argues that Defendant Craven is violating the Ex Post Facto Clause by not changing the Parole Commission's policy to match program availability as set by the prison.  Because there is limited space in the prison programs, only those inmates within two years of a parole eligibility date may attend.

Inmates do not have a constitutional right to rehabilitation or treatment programs.  *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985); *Hoptowit v. Ray,* 682 F.2d 1237, 1254-55 (9th Cir. 1982).  Therefore, Plaintiff must wait his turn to enter a program.  However, the Parole Commission cannot make the terms of parole impossible to fulfill.  In *Sheppard v. State of Louisiana Board of Parole*, 873 F.2d 761 (5th Cir. 1989), the Fifth Circuit Court of Appeals determined that a condition of parole could be construed as punitive and could "affect the length of sentence if the condition was so onerous that it was effectively impossible to meet."  *Id*. at 764.

Plaintiff had his first parole hearing on January 13, 2004, and was told that he was being passed to his full-term release date because he had not completed the sex offender treatment program.  He alleges that the new policy makes it impossible for him to enroll in the program until the year 2012, two years prior to his full-term release date in 2014.  *Complaint*, p. 5 (Docket No. 2).

However, on September 21, 2006, the Parole Commission granted Plaintiff's most recent Self-Initiated Progress Report (SIPR), and scheduled him for a parole hearing in October 2008, contingent upon him participating in a sex offender program.  *Kubinski Affidavit*, Exhibit J.

**MEMORANDUM DECISION AND ORDER - 16**

(Docket No. 30-3).  Plaintiff has alleged, but has failed to show, that he will not be able to enter and complete a sex offender program prior to October 2008.  That he has to wait to enter the program does not make it an impossible condition.  He offers no proof whatsoever that there is a policy that will prevent him from entering a program in a timely manner.  Rather, in Plaintiff's own words, the policy specifies that he need only be within "two years from a parole date or eligibility date in order to be placed on a list for said programs."  *Complaint*, p. 5 (Docket No. 2).  Therefore, he is eligible for the program between October 2006 and October 2008.

Based on the foregoing, Plaintiff's claim is subject to dismissal without prejudice.  The recommendation or requirement by the Parole Commission that Plaintiff complete a sex offender treatment program prior to being eligible for parole is not an additional punishment unless it is an impossible condition, and, here, Plaintiff has not shown that it is an impossible condition.  Therefore, the requirement does not violate the Ex Post Facto Clause.

Finally, Plaintiff's argument that the Parole Commission violated his rights because it "should not be able to deny any inmate 'parole eligibility' which was guaranteed by the sentencing courts" is rejected.  *Complaint*, p. 10 (Docket No. 2).  Under Idaho law, the sentencing court has no authority over the decision of when or whether an inmate will be paroled.  *Nickerson v. State*, 892 P.2d 493 (Idaho Ct. App. 1995).[9]  Rather, the Parole

---

[9] In *Nickerson*, the Court reasoned:
The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. . . .  [S]ubsequent actions taken by the Parole Commission -- whether or not such actions accord with a trial judge's

(continued...)

**MEMORANDUM DECISION AND ORDER - 17**

Commission has complete authority and discretion under the statutory scheme.  Plaintiff is

mistaken that his or any other Idaho sentencing court can "guarantee" parole.  Therefore, if the

sentencing judge indicated that he added five years to Plaintiff's sentence for "an extended

period of time on parole supervision," as Plaintiff alleges, such a statement is advisory, only.

*See Plaintiff's Statement of Material Facts*, ¶ 1 (Docket No. 37-2).  Moreover, Plaintiff's

judgment of conviction does not state or suggest that parole during the indeterminate portion of

sentence was guaranteed:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the
> defendant is guilty of the Crime of SEXUAL ABUSE OF A CHILD UNDER
> THE AGE OF SIXTEEN YEARS, Idaho Code § 18-1506(1)(a), a felony, and that
> Defendant be sentenced by being placed in the custody of the IDAHO STATE
> BOARD OF CORRECTION for a period of not less than FIVE (5) years, nor
> more than FIFTEEN (15) years, consisting of a minimum period of confinement
> of FIVE (5) years, during which the defendant shall not be eligible for parole or
> discharge or credit or reduction of sentence for good conduct (except as provided
> by Section 20-101D, Idaho Code) and a subsequent indeterminate period of
> custody not exceeding TEN (10) years.

*Judgment of Conviction* (Docket No. 44-6).

Finally, this argument is also without merit, and thus rejected, because any claim for

immediate or speedier release must be brought in habeas corpus, rather than a civil rights action.

*Preiser v. Rodriguez*, 411 U.S. at 500; *Wilkinson v. Dotson*, 544 U.S. at 82.  As a result,

Plaintiff's attempt to compare his civil rights case to *Cox v. Paskett*, CV04-324-S-BLW, a

habeas corpus case now pending in federal court, is unavailing.

---

[9](...continued)
expectations at the time of sentencing -- do not retroactively affect the validity of the
final judgment itself."
892 P.2d at 821.

**MEMORANDUM DECISION AND ORDER - 18**

**F.      Double Jeopardy**

Plaintiff alleges that when the Parole Commission passed him to his full-term release date rather than releasing him on parole, it in effect re-sentenced him, causing a Double Jeopardy violation.  Plaintiff alleges that this action of the Parole Commission does not allow him to remain parole eligible throughout the remainder of his sentence.

Plaintiff's double jeopardy claim is unsupported in fact.  The Court takes judicial notice of the Idaho Administrative Code (IDAPA) § 50.01.01.500 (entitled "Self-Initiated Progress Report") (SIPR), which provides: "An inmate may appeal the last parole decision of the commission."   Inmates may seek reconsideration of their parole denial no sooner than six months after the initial denial, and once per year after that.  IDAPA § 50.01.01, Paragraph 500.01.d.  The SIPR petition "must state the reason reconsideration is requested and the circumstances that have changed since the last hearing."  IDAPA § 50.01.01, Paragraph 500.01.c.  The SIPR process remains available for Plaintiff to request that he be reconsidered for parole each year.  In fact, as mentioned above, Plaintiff submitted an SIPR, which was granted by the Parole Commission in September 21, 2006, resulting in the scheduling of a hearing for him in October 2008.

Plaintiff's double jeopardy claim is also unsupported by law.  There is no United States Supreme Court case holding that the Double Jeopardy Clause applies to parole.  Even when inmates are released on parole and then their parole is revoked, courts have not found the Double Jeopardy Clause applicable.  *Cf.  Standlee v. Rhay*, 557 F.2d 1303, 1307 (9th Cir. 1977) (the

**MEMORANDUM DECISION AND ORDER - 19**

constitutional prohibition against double jeopardy is *not* implicated by parole revocation

proceedings).[10]  As a result, Defendants are entitled to summary judgment on this claim.

## G.      Equal Protection - Programming

Plaintiff also alleges that the programming requirements violate his equal protection

rights because "other inmates under similar situations do not have to contend with the changing

policy affecting their parole eligibility in that they were sentenced under said new policy."

*Complaint*, p. 10 (Docket No. 2).  Plaintiff has brought forward no instance of a sex offender

similarly situated to himself who has not had to comply with the sex offender policy or the

program waiting periods.  As a result, Plaintiff's equal protection claim is subject to denial.

## H.      Due Process Expungement of Records - Parole Commission Records

In a companion claim to his Equal Protection claim regarding the allegedly erroneous

information in his PSI report, Plaintiff asserts entitlement to have the information expunged

under the Due Process Clause of the Fourteenth Amendment.  The Court agrees that Plaintiff has

failed to bring forward sufficient evidence showing that the information contained in the PSI

report is false.  The PSI report discusses the incident and shows that the harassment charges

---

[10]  The *Standlee* Court reasoned:
> It is well established that parole revocation is not part of a criminal
> prosecution.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).
> Revocation of parole is remedial rather than punitive, since it seeks
> to protect the welfare of parolees and the safety of society.
> *Gagnon v. Scarpelli*, 411 U.S. 778, 783-84 (1973);  *Morrissey v.*
> *Brewer, supra*, 408 U.S. at 477.  The termination of parole results
> in a deprivation of liberty and thus is a grievous loss to the parolee.
> But the harshness of parole revocation does not alter its remedial
> nature.  *See United States v. National Association of Real Estate*
> *Boards*, 339 U.S. 485, 493 n. 6 (1950); *Gregory v. Wyse*, 512 F.2d
> 378, 382 (10th Cir. 1975).

557 F.2d at 1306.

**MEMORANDUM DECISION AND ORDER - 20**

were, in fact, dismissed.  The Parole Commission's report also shows that the harassment

charges were dismissed.  Because Plaintiff has failed to bring forward evidence showing the

falsity of the items at issue, he is not entitled to expungement.

**I.    Due Process Expungement of Records -Prison Records**

As set forth directly above, Plaintiff's claim against Warden Blades to correct erroneous

records in Plaintiff's prison file fails for lack of sufficient evidence supporting his contention that

the records are false.  One potential exception exists.  The prison file contains a copy of a letter

to Plaintiff from Edward Cheeney, M.S., Clinician, ICIO, dated October 21, 2003, which states,

"You have a documented 16-year, adult history of sexually assaultive behavior, including

harassment and stalking."  *See Plaintiff's Response to Motion for Summary Judgment*, Exhibit J,

p. 43 (Docket No. 37). This statement is a preface to Mr. Cheeney advising Plaintiff against

continuing a relationship with a prison nurse, who is now apparently Plaintiff's fiancee.  This

letter appears to be a part of the prison file, but not a part of the Parole Commission file.  The

Edward Cheeney letter was not included in the sealed or unsealed records of the Parole

Commission disclosed by Defendants, and, therefore, the Court considers this a claim for

expungement of the letter from his prison file.  *See Parole Commission Records* (Docket Nos. 44

& 46).

To determine whether Plaintiff has a constitutional right to expungement of prison

records, the Court reviews the current status of the law.  While *Paine v. Baker*, 595 F.2d 197 (4th

Cir. 1979), was formerly a widely-accepted standard for determining whether expungement

claims rose to the level of a constitutional violation, more recently courts have concluded that

*Paine* has been effectively overruled or modified by United States Supreme Court precedent.  In

**MEMORANDUM DECISION AND ORDER - 21**

*Paine*, the court addressed an allegation that an inmate should have access to his prison file prior to a parole hearing so that he would know whether it contained erroneous information that could be used to deny him parole.  There, the court held:

> [I]n certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree.

*Id*. at 201.  The element of reliance to a constitutionally significant degree requires the court to review the nature of the decision made or likely to be made on the basis of the false information (e.g., parole decisions), and the nature of the false information ( e.g., serious allegations that affected the parole decision).  *Id*. at 202.

In recent years, the Fourth and Fifth Circuits have abandoned the *Paine* view, citing the subsequent United States Supreme Court opinion in *Greenholtz*, *supra*, together with state supreme court cases concluding that inmates have no protected liberty interest in parole.  For example, in *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), the Fifth Circuit determined that because there is no liberty interest in parole in Texas, inmates could not challenge the alleged falsification of documents in their parole file on either procedural or substantive grounds, reasoning, "[t]he protections of the Due Process Clause are only invoked when State procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest."  *Id*. at 309.[11]

_____

[11]  The *Johnson* court also noted: "Were we to allow Johnson's Equal Protection challenge in the absence of any showing of *de jure* or *de facto* governmental classification, we would be in effect endorsing, under the aegis of 'Equal Protection,' the general federal constitutional right to be free from arbitrary and capricious state action which our procedural Due Process precedents eschew."  110 F.3d at 308.

**MEMORANDUM DECISION AND ORDER - 22**

Other courts have found that *Paine* has been altered by *Sandin, supra*, and require an inmate to show that reliance upon the evidence resulted in an inevitable lengthening of the duration of the inmate's sentence.  *See Perales v. R. Hickman*, 2007 WL 2225793, at *2 (D.Ca. 2007).  Prior to *Sandin*, the Ninth Circuit used a mandatory-statutory-language test to find that an inmate had a state-created liberty interest in accurate prison records and declined to address whether the issue had a constitutional dimension; however, the mandatory-statutory-language test has since been rejected in *Sandin*.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1318-1319 (9th Cir. 1987).  The Ninth Circuit has not expressly revisited the question post-*Sandin*.

In reviewing cases from various jurisdictions on whether inaccurate prison records rise to the level of a constitutional violation, this Court determines that it is appropriate to employ a threshold balancing test of interests before deciding whether a constitutional right exists.  In *Coles v. Levine*, 561 F.Supp. 146 (D.C. Md. 1983), the court explained:

> Because expungement [can involve] the destruction of historical fact, expungement is not automatic even where the deprived constitutional right is established at the time of a deprivation. Determining whether an order directing expungement is appropriate involves a balancing of interests; "the harm caused to an individual must be weighed against the utility to the Government of their [the records] maintenance."

*Id*. at 153 (relying on *Paton v. LaPrade*, 524 F.2d 862, 868 (3d Cir. 1972)).  Similarly requiring a threshold factual showing without expressly determining the legal issue, the court in *Romero v. Lann*, 2007 WL 2010748 (D. Tex. 2007), noted: "Even were *Paine* applicable, which is questionable, he has not shown that there is false information in his file which is or has been relied upon that has been relied upon to a constitutionally significant degree."  *Id*. at * 15.

The Edward Cheeney letter suggests either that the harassment and stalking charges were convictions rather than dismissals (clearly an inaccurate reading of the PSI report) or that there

**MEMORANDUM DECISION AND ORDER - 23**

was some factual basis for the charges regardless of dismissal (not clearly inaccurate because of the inclusion of the ex-girlfriend incident in the PSI report and the statement that the harassment charges related to the same ex-girlfriend).  However, there is no evidence that the letter was seen by or relied upon by the Parole Commission in its review of Plaintiff's suitability for parole. Rather, the letter was written to Plaintiff to warn him that his relationship with a prison nurse was inappropriate and his continuation of the relationship through visitations "further exacerbates the situation."  Plaintiff points to no other facts in the letter that are inaccurate.

Balancing the relevant factors, the Court finds and concludes here that Plaintiff has not shown harm rising to the level of a constitutionally significant degree from Edward Cheeney's questionable statement, whereas the prison has an interest in maintaining the letter for the purpose of showing that Plaintiff was warned about the fraternizing-with-staff incident.  As noted above, both the PSI report and the parole hearing report note that these misdemeanor charges were dismissed, and Plaintiff has not brought forward sufficient evidence to show the falsity of the ex-girlfriend incident reported but not charged in the PSI report.  Even if the Parole Commission saw the Edward Cheeney letter, its own records reflect the information set forth in the PSI report and note Plaintiff's disputation of the PSI report, and, therefore, Plaintiff has not shown that the Edward Cheeney letter was relied upon "to a constitutionally significant degree" necessary to invoke the Due Process Clause.  As a result, the Court concludes that, if a Due Process right exists to have inaccurate records expunged, Plaintiff has not made a threshold showing that his constitutional rights are being violated by maintenance of the Edward Cheeney letter in his prison file.

**MEMORANDUM DECISION AND ORDER - 24**

**J.      Failure to Place Plaintiff in Rehabilitative Programs**

As explained above, Plaintiff's claim that Warden Blades failed to place him in necessary programs required for parole eligibility under the Fourteenth Amendment also fails, because Plaintiff has not shown that he cannot participate in a program within two years of his parole eligibility date, which is October 2008.  There is no constitutional right to rehabilitation or to participate in treatment programs in prison.  *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985).  This claim will be dismissed without prejudice, allowing Plaintiff the opportunity to bring it again if he is unable to participate in programs required for parole by October 2008.

**K.      Defendants Wilmoth and Crockett**

On August 14, 2005, Jane Doe Defendant I, now identified as L.R. Wilmoth, an IDOC employee, sent Plaintiff a letter stating as follows:

> My office received your letter concerning the correction of your Pre-sentence Investigation Report (PSI).  This office cannot correct any information on this report.  The PSI belongs to the Courts.  You should have had an opportunity to read and correct any information in this report during your sentencing phase of your court proceedings.  You will need to take this up with the Sentencing courts.

*Plaintiff's Response to Motion for Summary Judgment*, Exhibit D, p. 35 (Docket No. 37).  Jane Doe Defendant II, now identified as Jeannie Crockett, a Parole Hearing Officer, apparently also refused to expunge these records from Plaintiff's file.  As discussed above, because I agree that the PSI report has been created by the sentencing court, Plaintiff's remedy is with that entity, rather than with Defendants.  As a result, these proposed defendants would be entitled to summary judgment on Plaintiff's claim, and, therefore, permitting amendment would be futile.

**MEMORANDUM DECISION AND ORDER - 25**

## II.

## OTHER PENDING MOTIONS

**A.      Plaintiff's Motion to Amend Petition (Docket No. 24)**

Plaintiff seeks to amend his Complaint to add new Defendants.  However, because in today's order it has been determined that Plaintiff's claims are subject to summary dismissal, adding new defendants would be futile.  The Motion is therefore denied.

**B.      Plaintiff's Motion for Reconsideration (Docket No. 25)**

Plaintiff asks the Court to reconsider its decision to not allow him to amend his Complaint to add the true names of the John and Jane Doe Defendants.  That request has been reconsidered in this Order, and thus, the Motion is moot.

**C.      Plaintiff's Motion for Leave to File Excess Pages (Docket No. 36)**

Plaintiff requests that the Court allow him to file an overlength brief in response to the Motion for Summary Judgment.  Good cause appearing, the Motion has been granted as all of Plaintiff's filings have been considered.

**D.      Defendants' Motion to Reconsider (Docket No. 44)**

In a prior Order Defendants were required to provide Plaintiff and the Court with copies of Parole Commission records, the PSI report, and the psychological evaluations conducted for the purpose of assessing Plaintiff's suitability for parole.  Defendants responded that various

**MEMORANDUM DECISION AND ORDER - 26**

state grounds exist to protect the distribution of these items to Plaintiff.  *See* Idaho Criminal Rule

32(h);[12] Idaho Code § 20-223(c);[13] Idaho Code 9-342(3)(e);[14] *Dopp v. Idaho Commission of*

---

[12]  Idaho Criminal Rule 32(h) provides:

(1) Custody of Presentence Report. Any presentence report shall be available for the purpose of assisting a sentencing court. After use in the sentencing procedure, the presentence report shall be sealed by court order, and thereafter cannot be opened without a court order authorizing release of the report or parts thereof to a specific agency or individual. Provided, the presentence report shall be available to the Idaho Department of Corrections so long as the defendant is committed to or supervised by the Department, and may be retained by the Department for three years after the defendant is discharged. The presentence investigator's own copy of the presentence report similarly is restricted from use by all but authorized court personnel. Neither the defendant, defendant's counsel, the prosecuting attorney nor any person authorized by the sentencing court to receive a copy of the presentence report shall release to any other person or agency the report itself or any information contained therein, except as provided in Article 1, Section 22(9) of the Idaho Constitution. Any violation of this rule shall be deemed contempt of court and subject to appropriate sanctions.

(2) Availability of Presentence Report to Third Parties. With the permission of the sentencing judge, the presentence report may be available to persons or agencies having a legitimate professional interest in the information likely to be contained therein, if it appears that such availability will further the plan or rehabilitation of the defendant or further the interests of public protection, and that appropriate safeguards for the confidentiality of information contained in the presentence report will be provided by the persons or agencies receiving such information. Such persons or agencies may include a physician or psychiatrist appointed to assist the court in sentencing, an examining facility, a correctional institution, a probation or parole department, or the supervisors of a public or private rehabilitation program.

(3) Availability of Presentence Report on Appeal. When relevant to an issue on which an appeal has been taken, the report shall be available for review in courts of appeal when requested by a party or ordered by the court pursuant to Idaho Appellate Rule 31(b).

[13]  Idaho Code § 20-223(c) provides:

Before considering the parole of any prisoner, the commission shall afford the prisoner the opportunity to be interviewed by the commission, a commissioner or other designated commission staff. A designated report prepared by commission staff or a designated department of correction employee which is specifically to be used by the commission in making a parole determination shall be exempt

(continued...)

**MEMORANDUM DECISION AND ORDER - 27**

*Pardons and Parole*, 162 P.3d 781 (Idaho App. 2007).[15]  Defendants were instructed to file the

documents in camera so that this Court could review them.  After reviewing the documents, the

in camera filing, only, will be deemed sufficient in this case, balancing the important state

interests identified by the statutes protecting disclosure of these items against Plaintiff's need for

the documents in this litigation.  Plaintiff is entitled to and has  received the Parole Commission

hearing minutes, reflecting what occurred at the hearing and the reason parole was denied.  *See*

*Parole Commission Records* (Docket No. 44-7).  The Court has determined here, after reviewing

---

[13](...continued)
from public disclosure; such reports contain information from the presentence
investigation report, medical or psychological information, victim information,
designated confidential witness information and criminal history information.

[14]  Idaho Code 9-342(3)(e) provides: "The right to inspect and amend records pertaining
to oneself does not include the right to review. . . [r]ecords of a prisoner maintained by the state
or local agency having custody of the prisoner or formerly having custody of the prisoner or by
the commission of pardons and parole."

[15]  In *Dopp,* the court reasoned:
    The statute plainly is not designed for the protection of prisoners. The
evaluation of the potential parolee is not a therapeutic examination and is not
prepared for the potential parolee's benefit. Rather, the examination is
a psychological profile prepared for the edification of the Commission, which must
determine whether a prisoner is "able and willing to fulfill the obligations of a
law-abiding citizen" and whether his release is "in the best interests of society."
I.C. § 20-223(c). Ultimately, the statute is designed to protect the public from sex
offenders whose character or high likelihood of reoffense, as revealed by a
psychological evaluation, suggests that they are not appropriate candidates for
parole. Because a potential parolee is not among the class of persons that the
statute is intended to benefit or protect, Dopp does not have a right to enforce any
requirement, implied in the statute, that such evaluations be conducted only by
licensed psychiatrists or psychologists. Dopp's habeas corpus petition therefore
did not state a claim upon which relief could be granted, and the district court
properly dismissed it.
162 P.3d at 786.

**MEMORANDUM DECISION AND ORDER - 28**

the record, that the PSI report contains the information alleged by Plaintiff, and the parole

hearing report reflects the information contained in the PSI report.  Accordingly, as discussed

above, because Plaintiff knows the contents of the PSI report, because he had an opportunity to

oppose and rebut the contents of the PSI report at sentencing, and because Defendant Craven and

the Parole Commission do not have control over the PSI report or authority to change the PSI

report, it would be fruitless to provide Plaintiff with the PSI report in this action.  Because the

control factors of the psychological testing that provide for its accuracy might be manipulated or

compromised on future tests if such evaluations were disseminated to inmates, and because

Plaintiff has no liberty interest in parole and cannot bring a due process claim, he need not be

provided with the psychological evaluations or parole hearing report prepared solely for the

purpose of parole eligibility.  These items shall remain a sealed part of the record in this case, not

available to Plaintiff or the public, but subject to review by this court and the appellate court.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.      Defendants' Motion for Summary Judgment (Docket No. 30) is GRANTED.  All claims

        are dismissed with prejudice other than those relating to whether Plaintiff will be able to

        attend a program that is required for parole prior to October 2008, which are dismissed

        without prejudice;

B.      Plaintiff's Motion to Amend Petition (Docket No. 24) is MOOT;

C.      Plaintiff's Motion for Reconsideration (Docket No. 25) is MOOT;

D.      Plaintiff's Motion for Leave to File Response (Docket No. 36) is GRANTED; and

**MEMORANDUM DECISION AND ORDER - 29**

E.      Defendants' Motion for Reconsideration (Docket No. 44) is GRANTED to the extent that

        the PSI report, the psychological reports, and the parole hearing report  may remain filed

        in camera under seal, and not provided to Plaintiff or the public.



        DATED:  **September 21, 2007**.

        Honorable Larry M. Boyle
        U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 30**